ALEXANDER DALLAS, RESPONDENT, v. KOEHLER SPORTING GOODS COMPANY, APPELLANT.

Argued June 22, 1914—Decided November 16, 1914.

1. Where personalty is tortiously taken and sold the owner may waive the tort and sustain an action in *assumpsit* upon the common counts as for money had and received to his use.
2. Where the trial judge has erroneously admitted in evidence verbal testimony in contradiction of the terms of the written contract between the parties, but subsequently by his charge carefully instructs the jury that such verbal testimony is not to be considered as changing the written contract, and that the writing must control, that the law of contracts is that where a person affixed his signature to a written contract that creates a conclusive presumption against the signer of it that he read, understood and accepted its terms—*Held*, that the original error is cured.

On appeal from the Essex County Circuit Court.

For the appellant, *Lum, Tamblyn & Colyer.*

For the appellee, *Hugh B. Reed.*

The opinion of the court was delivered by

VREDENBURGH, J.   In a suit upon contract the plaintiff had verdict below for the price he claimed the defendant company owed him for an E. M. F. motor car, and from the judgment entered thereon the defendant has appealed.

The main controversy at the trial related to the terms of payment under a contract between the parties for the purchase by the plaintiff of another automobile, known as a "Koehler 40," for the sum of $1,870.   The amount due under the contract was not the subject of dispute, but the question whether that price was payable in *cash* (or money) or by the transfer and delivery to defendant of plaintiff's E. M. F. car in lieu of $1,200 of cash, became the real bone of contention before the jury.

The material circumstances in evidence, which the jury were warranted in finding, were, that on February 24th, 1910, the plaintiff was the owner of the E. M. F. car (having bought it from the defendant in December previous for $1,200), and intending to purchase another car of higher power in its place, visited the annual automobile exposition of the defendant company, at its salesrooms in Newark, New Jersey, and was shown by a Mr. Winans (who was a local manager and salesman for the company) the Koehler 40 car.

Winans then stated to the plaintiff, and his wife, who accompanied him, that the company's cash price for this car, with its "accessories," was the sum of $1,870, but that he would allow $1,200 for the plaintiff's E. M. F. car, which the plaintiff desired to sell.   This arrangement the plaintiff agreed to, but before he left the salesroom signed a memorandum, partly written and partly printed (with blanks filled in in writing by Winans), which the plaintiff testified he did not either read or hear read.

The terms of this writing were inconsistent with the above-stated verbal agreement, as will presently appear, and hence the difficulties in the case which have arisen.   The material part of this paper reads as follows:

"February 24, 1910.

*"H. J. Koehler Sporting Goods Co.:*

"Gentlemen—Please enter my order for one model Koehler 40 automobile at list price of $1,685 F. O. B., Newark, to be delivered on or about March 1st, on which I hand you deposit of 20% ($395), receipt of which is hereby acknowledged, to be deducted from the price of car on delivery. This car to be accepted by me and balance to be paid by me in cash or by certified check when notified that car is ready for delivery." * * * "The foregoing memorandum embodies the entire agreement between us."

Anticipating for the moment the judicial course taken at the trial with respect to this paper, it should be observed that the judge, although he erroneously permitted verbal testimony to contradict the paper, yet this error was, we think, subsequently cured when he finally and correctly charged the jury that there could be no recovery on the ground that the original contract was, as the plaintiff claimed, "that the writing must control;" * * * "that the law of contracts is that where a person affixed his signature to a written contract that creates a conclusive presumption against the signer of it that he read, understood and accepted its terms."

On February 27th, 1910, before the Koehler car had been delivered to the plaintiff, Winans telephoned plaintiff and requested him to send down his E. M. F. car to the company, stating "they had a customer for it and they wished to demonstrate the car to him."

Immediately thereafter, on March 1st, 1910, the plaintiff, accordingly, delivered to defendant the E. M. F. car, sending with it a letter to defendant which was expressed as follows:

"105 Orange Road, Montclair, N. J., March 1, 1910.

*"H. J. Koehler Company, Halsey Street, Newark, N. J.:*

"Gent.—I enclose herewith check for $275.00 balance due on 'Koehler 40' car purchased from you on Feby. 24th, at the automobile show, and to be delivered to me according to contract, on March 1st, in perfect running order.

```
"Purchase price of car delivered in
    Newark ........................ $1,685.00
"Extra top ......................    125.00
"Speedometer ....................     25.00
"Special wind shield ............     35.00
                                   ──────────
                                   $1,870.00
"Cash paid on signing con-
    tract ................ $395.00
"E. M. F. delivered to you
    by request, Feby. 27th...  1,200.00
                              ──────────── $1,595.00
"Balance due on car, being amount of
    check enclosed ................. $275.00
```

"Kindly send receipted bill and deliver car to my chauffeur, J. L. Bryer, on demand, for my account.

"Yours truly,

"ALEXANDER DALLAS."

This letter, it will be perceived, modified the original contract as to the cash payable by plaintiff for the Koehler car, and notified the defendant that the plaintiff claimed a cash credit of $1,200 upon the purchase of the Koehler car, by reason of his delivery to defendant on February 27th of the E. M. F. car, in pursuance of the telephonic request above indicated.

The only written reply to this letter from the company was a letter under date of March 4th, 1910, to the effect that the company could not accept the $275 check (although it was never returned to plaintiff and was soon collected by defendant), for the stated reason that the matter had been handled by their manager, Winans, and that he was ill.

Within two days thereafter, Winans returned to his business and saw the plaintiff's letter, but made no reply to it, either in writing or verbally, at any time. We think the failure of the defendant to deny the correctness of this claimed credit was a fact, together with the other circumstances in the case, from which the jury had the right to infer

a waiver by the company of cash payment for the Koehler car. This modification the plaintiff, by his letter of March 1st, claimed to result from his delivery on February 27th of the E. M. F. car, at the request of the defendant.

The evidence also shows that the plaintiff had, repeatedly, after March 1st, demanded the delivery to him of the Koehler car by the defendant, or else that it should return to him his E. M. F. car. This it had neglected to do. On March 14th, 1910, at a late hour in the night, Winans, accompanied by Pfeifer, another salesman of the defendant, came to plaintiff's residence and represented to him, in substance, that because of his threatening to take steps to get back his own car they were in trouble, or, as they expressed it, "in a hole;" that the money for the E. M. F. car had not been received although it had been sold (in fact, at that time, as it subsequently appeared, Pfeifer had collected the money for it and had appropriated it to his own use) ; that if plaintiff would endorse a note in bank at three months for $1,200, it would help them out temporarily, and would save them probably "disagreeableness" with Mr. Koehler, as they had said to him they had the $1,200 for the E. M. F. car.

The fact that Pfeifer had already collected the $1,200 for the sale of the plaintiff's car and had appropriated it to his own use, was not then disclosed to the plaintiff, but, without stopping here to consider Pfeifer's dishonesty in the matter, it is sufficient to add that he then made and signed a three months' note for $1,200, payable to the order of the plaintiff, who endorsed it, and passed it to either Pfeifer or Winans. Its proceeds came to the treasury of the defendant, and the day following (March 15th, 1910) the defendant caused the Koehler car to be delivered to the plaintiff. This note at its maturity was dishonored by the maker and went to protest, and was afterwards paid by the plaintiff. Its proceeds, Winans admitted on his cross-examination, paid the balance of cash for this Koehler car, he stating that the car would not have been delivered if the balance had not been paid. The plaintiff had thus paid the full cash for the Koehler car, but had received nothing for his E. M. F. car.

It is a significant fact that at this meeting of March 14th Winans made no claim or pretence that the plaintiff was not entitled to the $1,200 credit for his car which his letter of March 1st had claimed.

The trial court left it to the jury, first, to determine whether it was within the scope of Winans' authority as manager and agent of the Koehler company to purchase the plaintiff's car; that if it was not, then the plaintiff could not recover; that if it was, then did he purchase the plaintiff's car for the Koehler company? If he did not the plaintiff could not recover, but if he did, and the purchase was within the scope of his authority, then the plaintiff was entitled to recover the value of the car.

Under this charge the jury were at liberty to find that Winans had authority to purchase the car for the company, and that, in fact, he did so purchase. We see no error in the court's instructions to the jury.

Even if the proofs show only a wrongful conversion of the plaintiff's car by defendant, the judgment may be legally supported.

It is long-settled law that where goods are tortiously taken and sold, the owner may waive the tort and sustain an action in *assumpsit* for money had and received to recover the money received for them. *Budd* v. *Hiler*, 27 *N. J. L.* 43; *Randolph Iron Co.* v. *Elliott*, 34 *Id.* 184.

In the case in hand the plaintiff has declared in *assumpsit* on special as well as upon the common counts. His demand for the possession of his E. M. F. car was refused by defendant, and a wrongful conversion was proved. The jury have returned a verdict in his favor for the value of the car. I think the judgment thereon should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, BOGERT, VREDENBURGH, HEPPENHEIMER, WILLIAMS, JJ.    14.

*For reversal*—None.